IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| **TRACIE M. HUNTER,** | : | Case No. 1:16-cv- |
|  | : |  |
|  | : | Judge |
| Plaintiff, | : |  |
|  | : | Magistrate Judge |
| vs. | : |  |
|  | : | **MOTION FOR TEMPORARY** |
|  | : | **RESTRAINING ORDER AND/OR** |
| **HAMILTON COUNTY BOARD** | : | **PRELIMINARY INJUNCTION** |
| **OF ELECTIONS,** *et al.*, | : |  |
|  | : |  |
| Defendants | : |  |

Pursuant to Fed. R. Civ. P. 65, and for the reasons enumerated in the accompanying Memorandum, Plaintiff Tracie M. Hunter moves this Court for a preliminary injunction and temporary restraining order enjoining Defendants from denying her voter registration. Judge Hunter must be registered to vote no later than October 9, 2016, in order to participate in the November 08, 2016 elections. To that avail, she respectfully moves this Court to assign an expedited briefing schedule and render a decision on the briefs. The reasons for this motion are detailed in the accompanying Memorandum of Law.

        Respectfully submitted,

        /s/ David A. Singleton
        DAVID A. SINGLETON, trial attorney (0074556)
        DORIANNE MASON (0093176)
        PAMELA H. THURSTON (0039467)
        Ohio Justice & Policy Center
        215 E. 9th Street, Suite 601
        Cincinnati, Ohio 45202
        513-421-1108 ext. 17; 513-562-3200 (fax)
        dsingleton@ohiojpc.org
        dmason@ohiojpc.org
        pthurston@ohiojpc.org

**MEMORANDUM OF LAW**

I. INTRODUCTION

The Constitution of the United States vests power in the states to disenfranchise those with felony convictions. Of the forty-nine disenfranchising states, Ohio is among the thirteen states that disenfranchise only during the period of incarceration. *See* Robin Miller, *Validity, Construction and Application of State Criminal Disenfranchisement Provisions*, in 10 American Law Reports 6th 31 (2006).

It is well-established that Ohio law disenfranchises only during the period of incarceration. The Secretary of State, the Chief Elections Officer of the State of Ohio, has declared that people with felony convictions are permitted to vote so long as they are not incarcerated. The Secretary of State's "FAQs: Voting & Voter Registration" webpage states: "[y]ou are qualified to register to vote in Ohio if you … are not incarcerated (in jail or in prison) for a felony conviction." Ohio Sec'y of State, Elections and Voting in Ohio,

http://www.sos.state.oh.us/sos/elections/Voters/FAQ/voterEligibility.aspx (last visited Sep. 21, 2016).

Although Judge Hunter has been convicted of a felony, her sentence has been stayed pending the federal district court's resolution of her habeas corpus petition. Therefore, she is not incarcerated and is legally entitled to register and vote in Ohio, just as every other person convicted of a felony who is not incarcerated.

The Hamilton County Board of Elections (hereinafter, "Board of Elections"), however, has adopted a different rule for Judge Hunter. Contrary to well-established principles of statutory construction and the public pronouncements of Ohio's own

Secretary of State, the Board of Elections has refused Judge Hunter's voter registration and denied her right to vote. These decisions deny Judge Hunter equal protection of the laws, in violation of the Fourteenth Amendment of the United States Constitution. Due to the immediacy of the harm, Judge Hunter now seeks a temporary restraining order and preliminary injunction to prevent the impermissible constitutional harm that will occur if she is prevented from registering and voting. Judge Hunter must be registered to vote no later than October 09, 2016 in order to participate in the November 08, 2016 elections.

## II. FACTUAL BACKGROUND

Judge Hunter is not currently incarcerated. On December 5, 2014, a state trial court sentenced Judge Hunter to six months in jail after a jury convicted her of one count of Having Unlawful Interest in a Public Contract. The Ohio Supreme Court (hereinafter, "Supreme Court") stayed her sentence pending her appeal to the First District Court of Appeals. On January 15, 2016, the First District Court of Appeals denied her appeal. The Supreme Court again stayed her sentence; this time, while it considered whether to accept her discretionary appeal. On May 18, 2016, the Supreme Court refused to accept jurisdiction. Judge Hunter then filed a petition for habeas corpus in United States District Court, challenging her conviction and requesting an emergency stay of her sentence.

On May 19, 2016, the United States District Court, Southern District of Ohio, Honorable Timothy S. Black, granted Judge Hunter a stay pending resolution of the habeas proceedings. This order stayed the execution of Judge Hunter's six-month jail sentence and permits Judge Hunter to remain free.

The Secretary of State, the Chief Elections Officer of the State of Ohio, states unequivocally that those with felony convictions who are not currently incarcerated are

able to register to vote.  This is affirmed on the Secretary of State website[1], in the Ohio elections manual[2]; on Ohio's voter registration instructions[3] and on the voter registration form.[4]

To specifically address the voting issues triggered by felony convictions and incarceration, the Ohio Secretary of State partnered with the Ohio Department of Rehabilitation and Correction and the Office of Reentry to produce a brochure entitled, "Reclaim Your Right to Vote."[5]  The brochure is available online and states in relevant part:

> **What circumstances would restrict a person's right to vote in Ohio who has been convicted of a crime?**
>
> *There are only two circumstances where a person can temporarily or permanently lose his or her right to vote in Ohio for being convicted of a crime. First, if a person is convicted of a felony and currently incarcerated for that conviction, that person is not eligible to vote during his or her imprisonment.*  This applies to periods of incarceration for felony probation violations, violations of post release control, parole, or being detained for extradition on a felony conviction from any state.  Second, a

---

[1] Ohio Sec'y of State, Elections and Voting in Ohio, https://www.sos.state.oh.us/sos/elections/Voters/FAQ/genFAQs.aspx (last visited Sep. 21, 2016) (emphasis added); see also Ohio Sec'y of State, Elections and Voting in Ohio, http://www.sos.state.oh.us/sos/elections/Voters/FAQ/voterEligibility.aspx (last visited Sep. 21, 2016).

[2] Ohio Sec'y of State, Election Official Manual, http://www.sos.state.oh.us/SOS/Upload/elections/directives/2016/Dir2016-21_EOM_2016-08.pdf (last updated Aug. 26, 2016).

[3] Ohio Sec'y State, Voter Registration Instructions, http://www.sos.state.oh.us/sos/upload/publications/election/VRinstructions.pdf (last updated June 2016).

[4] Ohio Sec'y State, Voter Registration and Update Form, http://www.sos.state.oh.us/sos/upload/elections/forms/VR_Form_04-2015.pdf (last visited Sep. 21, 2016).

[5] Ohio Dep't Rehab. Corr., Reclaim Your Right to Vote, http://www.drc.ohio.gov/Portals/0/Reentry/Brochure%20-%20Reclaim%20Your%20Right%20to%20Vote.pdf?ver=2016-09-05-193928-440 (last visited Sep. 21, 2016).

4

> person who has been twice convicted of felony violations of Ohio's election laws is permanently barred from voting in Ohio.

Ohio Dep't Rehab. Corr., *Reclaim Your Right to Vote*,

http://www.drc.ohio.gov/Portals/0/Reentry/Brochure%20-%20Reclaim%20Your%20Right%20to%20Vote.pdf?ver=2016-09-05-193928-440 (last visited Sep. 21, 2016) (emphasis added).

The brochure goes on to say, instructively, the following:

> **If someone has been convicted of a felony but is not currently incarcerated, can that person still vote?**
>
> Yes. A person who has been convicted of a felony but not currently incarcerated may vote if he or she is otherwise eligible to vote in Ohio. If a person has served time in jail or prison for a felony conviction and has been released, even if on post-release control, parole or in a "house arrest" or "half-way house" situation, he or she is eligible to vote. Please note, a person released from prison is required to register again at his or her next residence after release.
>
> **If someone has been convicted of a felony in another state and is not currently incarcerated for that conviction, can that person vote in Ohio?**
>
> Yes. Like all eligible Ohio voters, however, an individual in this circumstance must live in Ohio at least 30 days before voting in an election and must register at least 30 days before the election when he or she plans to vote.

*Id*.

Additionally, on the Secretary of State's website, the Secretary published answers to frequently asked questions relating to voting. As an answer to, "Am I Eligible to Vote?" the Secretary of State declares:

> You are qualified to register to vote in Ohio if you meet all the following requirements:
> 1) You are a citizen of the United States.
> 2) You will be at least 18 years old on or before the day of the general election.

5

3) You will be a resident of Ohio for at least 30 days immediately before the election in which you want to vote (see additional residency information below).
4) *You are not incarcerated (in jail or in prison) for a felony conviction.*
5) You have not been declared incompetent for voting purposes by a probate court.
6) You have not been permanently disenfranchised for violation of election laws.

Ohio Sec'y of State, Elections and Voting in Ohio,

http://www.sos.state.oh.us/sos/elections/Voters/FAQ/voterEligibility.aspx (last visited Sep. 21, 2016) (emphasis added); *see also* Ohio Sec'y of State, Elections and Voting in Ohio,

https://www.sos.state.oh.us/sos/elections/Voters/FAQ/genFAQs.aspx (last visited Sep. 21, 2016).

The state-published information on voter eligibility for persons with felony convictions could not be clearer: only individuals *currently incarcerated* for felony convictions are ineligible to vote. As discussed below, these declarations from the Secretary of State are correct interpretations of Ohio law and necessitate the finding that Judge Hunter is an eligible elector.

### III. LEGAL ARGUMENT

Courts must balance four factors when considering whether to grant a preliminary injunction. In evaluating a request for a preliminary injunction, a district court must consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. *McNeilly v. Land*, 684

6

F.2d 611, 615 (6th Cir. 2012) (quoting *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, (6th Cir. 1992)).

"[T]he four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied." *In re Eagle-Picher Indus.*, 963 F.2d at 859. These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements. *Northeast Ohio Coalition for the Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012).

When requesting a preliminary injunction, the movant need not prove the entire case. "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id*. (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citation omitted)). As discussed below, these factors weigh in favor of granting a preliminary injunction here.

**A. Judge Hunter is Likely to Succeed on the Merits.**

We anticipate that the Board of Elections will assert that Judge Hunter is not an eligible elector, based on an opinion letter it received, not from the Secretary of State, but from private lawyer in Columbus, Ohio. This letter focused on the validity of Judge Hunter's conviction and contended that Judge Hunter did not fit any of the circumstances under which disenfranchised persons becomes eligible to vote.[6] The Board of Elections is wrong.

---

[6] The present validity of Judge Hunter's conviction only resolves the first consideration; whether Judge Hunter's voter registration could be cancelled based upon her December 2014 felony conviction. That question is not at issue here, however; Plaintiff's Complaint assumes that her voter registration has in fact been cancelled, and simply asserts her right to re-register and vote during the period of her habeas corpus stay.

7

### i. Section 2961.01 restores voting rights to persons with felony convictions who are not currently incarcerated.

Section 2961.01 of the Ohio Revised Code outlines the process by which persons with felony convictions are disenfranchised and the process by which voting rights may be restored. Section 2961.01(A)(1) codifies the disenfranchisement of people convicted of felony offenses, stating:

> "A person who pleads guilty to a felony under the laws of this or any other state or the United States and whose plea is accepted by the court or a person against whom a verdict or finding of guilt for committing a felony under any law of that type is returned, unless the plea, verdict, or finding is reversed or annulled, is incompetent to be an elector or juror or to hold an office of honor, trust, or profit."

Ohio Rev. Code §2961.01(A)(1).

Section 2961.01(A) also authorizes individuals with felony convictions who are not currently incarcerated, to vote. Section 2961.01(A)(2) describes the removal of disability and the reenfranchisement of people who are not incarcerated for their felony convictions, stating:

> "When any person who under division (A)(1) of this section is incompetent to be an elector or juror or to hold an office of honor, trust, or profit is granted parole, judicial release, or a conditional pardon or is released under a non-jail community control sanction or a post-release control sanction, the person is competent to be an elector during the period of community control, parole, post-release control, or release or until the conditions of the pardon have been performed or have transpired and is competent to be an elector thereafter following final discharge. The full pardon of a person who under division (A)(1) of this section is incompetent to be an elector or juror or to hold an office of honor, trust, or profit restores the rights and privileges so forfeited under division (A)(1) of this section, but a pardon shall not release the person from the costs of a conviction in this state, unless so specified."

Ohio Rev. Code §2961.01(A)(2).

8

In construing a statute, the paramount concern is the legislative intent. "In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished." *State v. S.R.*, 63 Ohio St.3d 590, 594-595 (Ohio 1992). "Words used in a statute must be taken in their usual, normal or customary meaning," *Ohio ex rel. Carter v. Wilkinson*, 70 Ohio St.3d 65, 66 (Ohio 1994), unless given specific statutory definition. As outlined below, Judge Hunter has been judicially released under Ohio Revised Code §2961.01(A)(2) and in turn, is an eligible elector.

In Ohio Revised Code §2961.01(C), the legislature provided specific statutory definitions for three terms: community control; non-community control sanctions; and post-release control; but it chose to leave judicial release undefined. Specifically, Section 2961.01(C) states:

> (1) "Community control sanction" has the same meaning as in section 2929.01 of the Revised Code.
> (2) "Non-jail community control sanction" means a community control sanction that is neither a term in a community-based correctional facility nor a term in a jail.
> (3) "Post-release control" and "post-release control sanction" have the same meanings as in section 2967.01 of the Revised Code.

Ohio Revised Code §2961.01(C).

The statutory language in Section 2961.01(C) evidences the legislature's ability to limit the statute's reach by relying on specialized definitions of certain terms. *Lake Shore Elec. R. Co. v. Pub. Util. Comm'n. of Ohio,* 154 N.E. 239, 242 (Ohio 1926) (had the legislature intended a particular meaning, "it would not have been difficult to find language which would express that purpose," having used that language in other connections). Here, legislators chose neither to define judicial release in Section 2961.01 nor to incorporate a definition of judicial release by reference.

9

Because the legislature spelled out three defined terms in Section 2961.01(C), by reference to other laws, and did not include such a definition for the term "judicial release," the principle of *expressio unius, exclusio alterius* applies, and compels the conclusion that the legislature intended "judicial release" to have the ordinary meaning that an ordinary citizen would understand. Any other reading would render the list of definitions in Section 2961.01(C) superfluous and therefore meaningless. Ohio law does not permit such a result. *See e.g.*, *Erb v. Erb,* 91 Ohio St.3d 503 (Ohio 2001).

Any term left undefined by statute is to be accorded its common, everyday meaning. Words in common use will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them. The Revised Code itself provides that the terms used in its statutes "shall be read in context and construed according to the rules of grammar and common usage." Ohio Rev. Code §1.42; s*ee also Ohio ex rel. Celebrezze v. Bd. Cty. Comm'rs. Allen Cty.*, 32 Ohio St.3d 24, 27 (Ohio 1987) (internal quotes and citations omitted). Thus, because the legislature declined to define judicial release or designate that it has the same meaning as used elsewhere in the code (i.e., Ohio Rev. Code §2929.20), judicial release has its ordinary and plain meaning.

As used in Section 2961.01(A)(2), judicial release means to be set free from confinement by a court or judicial act. Both terms judicial and release are broad in scope and inclusive. Black's Law Dictionary defines "judicial" as:

> 1. Of, relating to, or by the court or a judge <judicial duty> <judicial demeanor>. 2. In court <the witness's judicial confession>. 3. Legal <the Attorney General took no judicial action>. 4. Of, relating to, or involving a judgment <an award of judicial interest at the legal rate>.

*Judicial*, Black's Law Dictionary (10th ed. 2014).

Merriam-Webster defines "judicial" as follows:

10

> 1a: of or relating to a judgment, the function of judging, the administration of justice, or the judiciary <judicial processes>
> b : belonging to the branch of government that is charged with trying all cases that involve the government and with the administration of justice within its jurisdiction — compare executive, legislative
> 2: *ordered or enforced by a court …*

*Judicial,* Merriam-Webster (11th ed. 2016) (emphasis added).

Black's Law Dictionary defines "release" as:

> 1. *Liberation from an obligation*, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced <the employee asked for a release from the noncompete agreement>. — Also termed discharge; surrender. 2. The relinquishment or concession of a right, title, or claim <Benson's effective release of the claim against Thompson's estate precluded his filing a lawsuit>. … 7. *The action of freeing or the fact of being freed from restraint or confinement* <he became a model citizen after his release from prison>. 8. A document giving formal discharge from custody <after the sheriff signed the release, the prisoner was free to go>. — release, vb.

*Release,* Black's Law Dictionary (10th ed. 2014) (emphasis added).

Merriam-Webster defines "release" as:

> 1: to set free from restraint, *confinement*, or servitude; …
> 2: to relieve from something that confines, burdens, or oppresses …

*Release*, Merriam-Webster (11th ed. 2016) (emphasis added). Thus, given its ordinary and plain meaning, judicial release means to be free from confinement by a court or judicial act.

This straightforward interpretation of the term "judicial release" is also founded in law. Ohio Revised Code §1.11 dictates that remedial laws, and all proceedings under them, shall be liberally construed in order to promote their object and assist the parties in obtaining justice. Ohio Rev. Code §1.11; *see also Ohio ex rel. Gains v. Rossi*, 86 Ohio St.3d 620, 622 (Ohio 1999); *Barker v. Ohio*, 62 Ohio St.2d 35, 42 (Ohio 1980).

11

The Tenth District Court of Appeals dealt directly with this issue in *Ohio v. Moon,* 1977 WL 199886 (Franklin Cty. 1977). Moon, who had been convicted of a felony, sought restoration of his civil rights. On reversal of the trial court's refusal to restore his rights, the Tenth District applied Ohio Revised Code 2961.01(A) liberally, stating:

> R. C. 2961.01 thus provides for restoration of the right to vote when a convicted felon who has been imprisoned is released on probation or parole. While it is silent concerning the situation at hand, i.e., where the convicted felon has never been sentenced to jail, *the obvious import is that the convicted felon is competent to be an elector when not incarcerated*, thus applying to the felon who receives punishment of a fine only.

*Id.* (emphasis added).

Ultimately, whether the court finds that a stay of execution is judicial release under the literal language of the statute or finds that the statute's "obvious import" is that a stay of execution falls under the purview of 2961.01(A)(2), the conclusion must be that Judge Hunter is not incarcerated for her felony conviction, and is thus eligible to register to vote.

> ii. **Ohio Denied Judge Hunter the Right to Register to Vote in Violation of the Equal Protection Clause of the Fourteenth Amendment.**

The Equal Protection Clause of the Fourteenth Amendment prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The Equal Protection Clause protects qualified electors from state action that arbitrarily treats voters differently and from state action that burdens the right to vote. *Obama for America v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012).

Although states may regulate the administration of elections, "no State can pass a law regulating elections that violates the Fourteenth Amendment's command that 'No State shall * * * deny to any person * * * the equal protection of the laws." *Williams v. Rhodes*, 393 U.S. 23, 29 (1968). By denying Judge Hunter the ability to register to vote, the Board of Elections is denying her equal protection of the laws.

### 1. Voting is a fundamental right protected by the United States Constitution.

Judge Hunter has a fundamental right to vote. "The right to cast an effective vote 'is of the most fundamental significance under our constitutional structure." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 585 (6th Cir. 2006) *(quoting Burdick v. Takushi, 504 U.S. 428, 433 (1992)); (see also Obama for America*, 697 F.3d at 428*)* ("The right to vote is a 'precious' and 'fundamental' right." (quoting *Harper v. Va. State Bd. Of Elections*, 383 U.S. 663, 670 (1996)). The state may, within the bounds of the Constitution, strip convicted felons of their voting rights. *Johnson v. Bredesen,* 624 F.3d 742, 746 (6th Cir. 2010); *see also Richardson v. Ramirez,* 418 U.S. 24, 54 (1974). However, where the state has created a disability resulting from a conviction, it may also provide for the *removal* of that disability.

Ohio has designated a process to reinstate the voting rights of persons convicted of a felony who are not currently incarcerated; Section 2961.01(A)(2) sets out this process. Those eligible under 2961.01(A)(2) have a restored interest in their fundamental right to vote. This vested interest warrants constitutional protection. *See Northeast Ohio Coal. Homeless*, 696 F. 3d at 591-592. (Because all other rights, even the most basic, are illusory if the right to vote is undermined, the right to vote is protected *in more than the initial allocation of the franchise*) (internal citations omitted) (emphasis added). Once

13

Ohio granted the franchise to non-incarcerated persons with felony convictions, those citizens possessed "a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Obama for America*, 697 F.3d at 428.

Unlike the plaintiffs in *Johnson*, who did not meet the eligibility requirements set out in the state statute at issue, Judge Hunter was judicially released in accordance with Section 2961.01(A)(2), and thus had her voting eligibility restored. Judge Hunter's right to vote therefore, merits the heightened protection afforded the fundamental right of voting and cannot be impermissibly denied. *Northeast Ohio Coal. Homeless*, 696 F. 3d at 561-92. (citations omitted); *Harper v. Va. State Bd. Of Elections*, 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment"). Accordingly, the state cannot impose a burden so severe as outright denial of Judge Hunter's right to vote without showing a "narrowly drawn state interest of compelling importance." *Crawford v. Marion County Election Board*, 553 U.S. 181, 190 (2008), quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992); see *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 387 (6th Cir. 2008) ("When a State places a severe or significant burden on a core political right . . . it faces a 'well-nigh insurmountable' obstacle to justify it." (quoting *Meyer v. Grant*, 486 U.S. 414, 425 (1988))).

### 2. Other similarly situated, non-incarcerated persons convicted of felonies are permitted to vote.

Denial of Judge Hunter's right to vote could not survive even a rationally-related analysis. "The Equal Protection Clause does not forbid classifications," *Obama for America,* 697 F.3d 423 at 435; but differential burdens on voting, unrelated to differences in voter qualifications, violate the Equal Protection Clause. *See Crawford v. Marion Cty.*

14

*Election Bd.,* 553 U.S. at 189 (plurality opinion) ("[E]ven rational restrictions on the right to vote are invidious if they are unrelated to voter qualifications."); *League of Women Voters v. Brunner,* 548 F.3d 463, 477 (6th Cir. 2008) ("At a minimum . . . equal protection requires 'nonarbitrary treatment of voters.'" (internal citations omitted).

Here, other similarly situated, non-incarcerated persons convicted of felonies are permitted to vote and there is no legitimate government interest to support treating Judge Hunter differently. Judge Hunter's emergency stay provided judicial release. As with all other statuses delineated in 2961.01(A)(2), Judge Hunter has been released from incarceration and is entitled to vote.

**B. Judge Hunter will suffer irreparable harm if an injunction is not granted.**

Constitutional violations are routinely recognized as triggering irreparable harm unless they are promptly remedied. *See e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) (loss of constitutional "freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). In fact, "when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Obergefell v. Kasich,* 2013 WL 3814262, at *6 (S.D. Ohio 2013); 11A Federal Practice and Procedure Civ. §2948.1 (3d ed. & Supp.).

Given the centrality of the right to vote in our constitutional system, any improper denial of the right to vote inflicts irreparable harm. *See Miller v. Blackwell*, 348 F. Supp. 2d 916, 922 (S.D. Ohio 2004) ("Because this Court has found that the Defendants' challenged actions threaten to impair both Plaintiffs' constitutional right to due process and constitutional right to vote, the Court must find that Plaintiffs will suffer an irreparable injury if the temporary restraining order does not issue."); *Southwest Voter*

15

*Registration Educ. Project v. Shelley*, 344 F.3d 882, 907 (9th Cir. 2003) ("Abridgement or dilution of a right so fundamental as the right to vote constitutes irreparable injury.") (citation and internal quotation marks omitted); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (holding that denial of the right to vote constitutes "irreparable harm"). Denial of Judge Hunter's ability to register and vote, would subject her to irreparable harm.

### C. The granting of an injunction will not harm other parties.

Defendants cannot make a colorable argument that harm will occur to others if a preliminary injunction is granted in this case. To begin, the Secretary of State's website, advertising materials and even voter registration materials, all support a finding that those in Judge Hunter's position would be allowed to register to vote. Furthermore, Judge Hunter was granted a habeas corpus stay, a rare legal action which requires a finding of likelihood of success in the challenge to her conviction, a standard by which very few people will be granted relief.

Lastly, when Plaintiffs have shown a substantial likelihood of success on the merits, as has been demonstrated here, "no substantial harm to others can be said to inhere in its enjoinment." *Déjà Vu of Nashville v. Metro. Gov't. of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001) (citing *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998)).

### D. The public interest favors the granting of an injunction.

Citizens and the government alike have an interest in eligible voters participating in the electoral process. "[T]he public has a strong interest in exercising the fundamental political right to vote." *See Obama for America*, 697 F.3d at 428 (internal citations

16

omitted); *Déjà vu of Nashville*, 274 F.3d 377 at 400 ("[I]t is always in the public interest to prevent violation of a party's constitutional rights"). The apportioned weight of this interest is particularly significant in this instance where it was found that that Judge Hunter had "evidenced a significant possibility of success on the merits" of her habeas corpus challenge.

Additionally, the public interest favors being able to rely on the representations of the Chief Elections Officer of the state regarding voter eligibility and requirements.

### IV. CONCLUSION

For the reasons discussed above, this Court should enter an order granting Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction to enjoin Defendants from denying Judge Hunter the right to register and vote. Because Plaintiff must be registered 30 days before Election Day in order to vote in the upcoming general election, Plaintiff respectfully requests that this case be expedited so that she may register on or before October 9, 2016. Accordingly, Plaintiff respectfully urges this Court to assign an expedited briefing schedule and render a decision on the briefs.

Respectfully submitted,

/s/ David A. Singleton
DAVID A. SINGLETON, trial attorney (0074556)
DORIANNE MASON (0093176)
PAMELA H. THURSTON (0039467)
Ohio Justice & Policy Center
215 E. 9th Street, Suite 601
Cincinnati, Ohio 45202
513-421-1108 ext. 34
513-562-3200 (fax)
dsingleton@ohiojpc.org
dmason@ohiojpc.org
pthurston@ohiojpc.org

**PLAINTIFF'S EXHIBIT LIST**

A. Secretary of State - Election Official Manual excerpts

B. Secretary of State - FAQs - Voter Eligibility

C. Secretary of State/DRC - Reclaim Your Right to Vote Brochure

D. Secretary of State - Voter Registration and Information Form

E. Secretary of State - Voter Registration Instructions

F. Secretary of State - FAQs - Elections and Voting in Ohio

G. Department of Rehabilitation and Correction - Reentry Resource Manual 2014 excerpts

H. Federal Court Order Granting Emergency Motion For Stay of Execution of Sentence

## **CERTIFICATE OF SERVICE**

I certify that on September 27, 2016, a copy of the foregoing Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction with Memorandum in Support was filed electronically. Parties may access this document through that system.

In addition, copies of the Complaint, the foregoing Motion and Memorandum, and the accompanying Exhibits, are being sent by e-mail on September 27, 2016 to anticipated counsel for the following parties:

1. Assistant Attorney General Ryan Richardson,

   Ryan.Richardson@ohioattorneygeneral.gov

   Counsel for Defendants Husted and DeWine

2. Assistant Attorney General Steve Voigt

   Steve.Voigt@ohioattorneygeneral.gov

   Counsel for Defendants Husted and DeWine

3. Assistant Prosecuting Attorney James Harper

   James.Harper@hcpros.org

   Counsel for Defendant Hamilton County Board of Elections


                                              /s/ David A. Singleton_____
                                              DAVID A. SINGLETON