**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| TRACIE M. HUNTER, | : | Case No. 1:16cv962 |
| Plaintiff, | : | Judge Michael R. Barrett |
| v. | : | |
| HAMILTON COUNTY BOARD OF ELECTIONS, *et al.*, | : | |
| Defendants. | : | |
| | : | |

<u>**OPINION AND ORDER**</u>

This matter is before the Court on Plaintiff Tracie M. Hunter's Motion for Temporary Restraining Order and/or Preliminary Injunctive Relief. (Doc. 3). Defendant Hamilton County Board of Elections (hereinafter referred to as the "Board") has filed a response (Doc. 14) and Plaintiff has filed a reply (Doc. 16). The Court held a hearing on October 6, 2016.

**I.      FACTS**

The facts of this case are largely undisputed. The following facts are generally set forth in Plaintiff's Complaint and Motion for injunctive relief, as well as Defendant's responsive pleading.

Plaintiff is a citizen of Ohio and a resident of Hamilton County. Formerly a judge in Hamilton County, Plaintiff was convicted in the Hamilton County Court of Common Pleas of one count of Having an Unlawful Interest in a Public Contract. On December 5, 2014, she was sentenced to six months in the Hamilton County Justice Center (hereinafter referred to as "jail"). The Ohio Supreme Court stayed Plaintiff's sentence pending her appeal to the First District Court of Appeals. On January 15, 2016, the First District Court of Appeals affirmed Plaintiff's

1

conviction. The Ohio Supreme Court again stayed Plaintiff's sentence while it considered whether to accept her discretionary appeal. On May 18, 2016, the Supreme Court declined to accept jurisdiction. On May 19, 2016, Plaintiff's sentence was stayed for a third time; this time by the United States District Court, Southern District of Ohio during the pendency of her habeas corpus petition. Plaintiff's sentence remains stayed and she remains out of jail.

On the basis of her felony conviction and advice of counsel, the Board canceled Plaintiff's voter registration. (Doc. 2, ¶ 10; *See also generally* Doc. 14). Apparently, Plaintiff sought to re-register as an elector on August 19, 2016. After the Board initially approved her registration form, Plaintiff was sent a letter on September 29, 2016 advising Plaintiff that her voter registration was processed in error and she was not qualified to vote. (Doc. 14-1, PageID 106).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that the denial of her voter registration is a burden on her fundamental right to vote in violation of the Equal Protection Clause of the Fourteenth Amendment.[1]

## II.   STANDARD FOR INJUNCTIVE RELIEF

Plaintiff seeks injunctive relief allowing her to register to vote by October 11, 2016, in time for the November 8, 2016 election.

Under Federal Rule of Civil Procedure 65, injunctive relief is an extraordinary remedy, the purpose of which is to preserve the status quo. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). In determining whether to grant or deny a preliminary injunction, the Court must consider four factors: (1) whether the movant has

---

[1] In addition to naming the Hamilton County Board of Elections as a defendant in this case, Plaintiff also named the Ohio Attorney General and the Ohio Secretary of State. The claims against the Ohio Attorney General have since been voluntarily dismissed (Doc. 11) and Plaintiff and the Ohio Secretary of State filed a Stipulation of Dismissal (Doc. 17). The claims against the Hamilton County Board of Elections remain.

a likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (citing *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). The foregoing factors are not prerequisites, but are factors that the Court should balance. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

On a preliminary injunction, "a plaintiff must show more than a mere possibility of success," but need not "'prove his case in full." *Certified Restoration Dry Cleaning Network*, 511 F.3d at 543. "'[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation.'" *Northeast Ohio Coalition v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)).

## III.   <u>ANALYSIS</u>

As an initial matter, the Board argues that Plaintiff lacks standing to assert her Section 1983 claim for denial of the right to vote because it is premature. Article III standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Plaintiff bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119, L.Ed.2d 531 (1992). "To demonstrate standing, a plaintiff must have alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Salazar v. Buono*, 559 U.S. 700, 711, 130 S.Ct. 1803, 176 L.Ed.2d 634 (2010). To satisfy the requirements of Article

III standing, a plaintiff must establish: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001) (quoting *Friends of the Earth, Inc.v. Laidlaw Envtl. Servs.*, 528 U.S.167, 180-181 (2000)).

Relying on *Lawson v. Shelby Cty., Tenn.*, 211 F.3d 331, 336 (6th Cir. 2000), the Board argues that the constitutional right at issue in this case is an individual's right to vote – not the right to register to vote. The Board's reliance on *Lawson* is misplaced. *Lawson* addressed a statute of limitations issue – namely, whether the statute of limitations for a lawsuit commenced after two individuals had been denied the right to vote or after they had been denied the right to register to vote. *Id.* The Sixth Circuit held that the statute of limitations began to run when they were denied the right to vote, explaining that "the issue at hand in this case is the fundamental right to vote not the right to register to vote." *Id.* at 336. Because the issue before this Court is not whether the statute of limitations bars Plaintiff's claim, the Court finds *Lawson* inapposite to the facts of this case.

Here, it is undisputed that the Board has denied Plaintiff's registration to vote. Unless the relief Plaintiff seeks is provided, she will not be permitted to cast her ballot on November 8, 2016. Plaintiff satisfies the requirements of Article III standing: Her threatened injury—the denial of her registration and subsequently, right to vote—is concrete and particularized; it is undisputed that the Board denied her voter registration and thus, the alleged injury is fairly traceable to the Board's actions; and if the Court grants her requested relief, she will be

4

permitted to vote, redressing her threatened injury. Accordingly, Plaintiff's claim is ripe for adjudication and this Court has jurisdiction.

## A.  Likelihood of Success on the Merits

### 1. Fourteenth Amendment – Equal Protection Clause

To show a likelihood of success, a plaintiff must demonstrate more than a mere possibility of success, but it need not "'prove [its] case in full.'" *Northeast Ohio Coalition v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007)).

Section 1983 creates a cause of action to remedy constitutional violations as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir.2006).

Plaintiff argues that the Board denied her the right to register to vote in violation of the Equal Protection Clause of the Fourteenth Amendment. The Sixth Circuit has explained that under the Equal Protection Clause, "states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (citing *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997).

It is undisputed that voting is a fundamental right. *See e.g. Libertarian Party of Ohio v. Blackwell,* 462 F.3d 579, 585 (6th Cir. 2006) (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). It is also undisputed that states may disenfranchise convicted felons, subject to their ability to re-register if and when they are once again competent electors. R.C. 2961.01(A). The question thus becomes whether the Board impermissibly burdened Plaintiff's fundamental right to vote or otherwise treated her differently from others who are similarly situated without any rational basis for the difference.

### i. Ohio Revised Code 2961.01 and Secretary of State Directive 2015-25

Ohio Revised Code ("R.C") 2961.01 outlines the process of disenfranchisement and restoration of voting rights. To begin, R.C. 2961.01(A)(1) explains that someone is disenfranchised or incompetent to be an elector when:

> A person who pleads guilty to a felony under the laws of this or any other state or the United States and whose plea is accepted by the court or a person against whom a verdict or finding of guilt for committing a felony under any law of that type is returned, unless the plea, verdict, or finding is reversed or annulled, is incompetent to be an elector or juror or to hold an office of honor, trust, or profit.

The statute continues as follows:

> When any person who under division (A)(1) of this section is incompetent to be an elector or juror or to hold an office of honor, trust, or profit is granted parole, judicial release, or a conditional pardon or is released under a non-jail community control sanction or a post-release control sanction, the person is competent to be an elector during the period of community control, parole, post-release control, or release or until the conditions of the pardon have been performed or have transpired and is competent to be an elector thereafter following final discharge. The full pardon of a person who under division (A)(1) of this section is incompetent to be an elector or juror or to hold an office of honor, trust, or profit restores the rights and privileges so forfeited under division (A)(1) of this section, but a pardon shall not release the person from the costs of a conviction in this state, unless so specified.

R.C. 2961.01(A)(2).

6

The parties disagree as to whether a convicted felon, who is not currently incarcerated, albeit sentenced to a jail term, is competent to be an elector. Plaintiff argues she is competent to be an elector because she is not incarcerated and has been, at least temporarily, granted judicial release. The Board argues judicial release is a defined term under Ohio law, and Plaintiff's circumstances run contrary to that definition. Accordingly, the Board argues Plaintiff is incompetent to be an elector.

The Secretary of State is the Chief Elections Officer of the State of Ohio, "with such powers and duties relating to the registration of voters and the conduct of elections as are prescribed in Title XXXV of the Revised Code." R.C. 3501.04. While the Board is responsible for removing ineligible electors from voter registration, it does so in accordance with the law and directives of the Secretary of State. R.C. 3501.11(U); *see also State ex rel. Donegan v. Cuyahoga Cty Bd. Of Elections*, (136 Ohio App.3d 589 (8th Dist. 2000) (explaining that the board of elections is the supervisor of elections under the direction of the Secretary of State). In other words, the Secretary of State provides the Board with instructions to follow by issuing directives to county boards for the administration of elections. R.C. 3501.05(B).

The Secretary of State publishes the Ohio Election Official Manual, which serves as a series of directives that provide guidance on election issues. (Doc. 2, ¶ 2; Doc. 12, PageID 75; *see also generally* Ohio Election Official Manual ("the Manual"), *available at* http://www.ohiosecretaryofstate.gov/sos/publications.aspx (last updated September 26, 2016). The Manual includes a directive regarding the application of R.C. 2961.01 – Directive 2015-25. Section 1.02 of Directive 2015-25 states:

To be qualified to register as an elector, a person must:

**1.** Be a citizen of the United States;

2.   Be at least 18 years of age on or before the day of the next general election;

3.   Be a resident of Ohio for at least 30 days immediately before the election at which the person wants to vote;

4.   Not be incarcerated (in jail or prison) for a felony conviction under the laws of Ohio, any other state, or the United States;

5.   Not have been declared incompetent for voting purposes by a probate court; and

6. Not have been permanently disenfranchised for violations of election laws.

There is no dispute that under Ohio law, the Board must generally adhere to directives issued by the Secretary of State.[2]   The Board, however, argues that this directive "is at best murky guidance susceptible of at least two compelling interpretations."   The Board argues that the directive somehow leaves the circumstances underlying the instant case undiscussed – namely, "whether a person like Judge Hunter who remains at liberty as a result of a judicial stay of her sentence, has been 'judicially released' within the meaning of Ohio Revised Code § 2961.01(A)(2) and therefore eligible to vote."   (Doc. 14, PageID 97).   The Court disagrees. The directive clearly provides a comprehensive list for determining whether a person is qualified to register as an elector.   The requirement at issue is number four: whether Plaintiff is incarcerated (in jail or prison).   The Secretary of State does not qualify this requirement by explaining that convicted felons whose sentences have not yet been imposed are not eligible to vote.   Nor does it provide that people in the same situation Plaintiff finds herself in cannot vote. Rather, the Secretary of State unequivocally lists six requirements that must be met in order to be considered qualified to register as an elector.

Moreover, in addition to being included in the Manual, the list of six qualifications is included on the front page of the Voter Registration and Information Update Form (Doc. 3-4,

---

[2] The Board argues Directive 2015-25 is potentially in conflict with Ohio law and thus, should not be followed.  The Board's argument on this point is addressed below.

PageID 40) and on the Secretary of State's website on the FAQs: Voter Eligibility page (Doc. 3-2, PageID 35).  In fact, that webpage definitively states that "[y]ou are qualified to vote in Ohio if you meet all of the following requirements," and then proceeds to list the six requirements provided in Directive 2015-25.  *Id.*  It is undisputed that Plaintiff currently meets all six of those requirements.

Nevertheless, the Board argues that information contained on the Secretary of State's website, for example, is not binding if it is not a directive.  Even assuming *arguendo* that Directive 2015-25 is not clear, as the Board argues, the Secretary of State, by its own admission, has issued various other publications restating the position set forth in Directive 2015-25.  (Doc. 12, PageID 77; Doc. 15, PageID 117).  While the Court agrees with the Board that pursuant to R.C. 3501.11(U), publications other than directives are not binding with respect to removing ineligible electors from voter registration lists, such information may still be useful to help the Board interpret the Secretary of State's intent.  Considering the other publications provided by the Secretary of State, even if they are classified as something other than binding directives, the only reasonable interpretation of Directive 2015-25 seems to be the one set forth by Plaintiff.

For example, in addition to the list of six requirements set forth in Directive 2015-25, the Ohio Secretary of State, the Ohio Department of Rehabilitation and Correction, and the Office of Reentry, working together, produced a brochure titled, "Reclaim Your Right to Vote," which provides answers to frequently asked questions.[3]  (Doc. 3, PageID 12).  The brochure states in relevant part:

> **What circumstances would restrict a person's right to vote in Ohio who has been convicted of a crime?**

---

[3]www.drc.ohio.gov/Portals/0/Reentry/Brochure%20%20Reclaim%20Your%20Right%20to%20Vote.pdf?ver=2016-09-05-193928-440

There are only two circumstances where a person can temporarily or permanently lose his or her right to vote in Ohio for being convicted of a crime. First, if a person is convicted of a felony and currently incarcerated for that conviction, that person is not eligible to vote during his or her imprisonment. This applies to periods of incarceration for felony probation violations, violations of post release control, parole, or being detained for extradition on a felony conviction from any state. Second, a person who has been twice convicted of felony violations of Ohio's election laws is permanently barred from voting in Ohio.

The brochure also explains as follows:

**If someone has been convicted of a felony but is not currently incarcerated, can that person still vote?**

Yes. A person who has been convicted of a felony but not currently incarcerated may vote if he or she is otherwise eligible to vote in Ohio. If a person has served time in jail or prison for a felony conviction and has been released, even if on post-release control, parole or in a "house arrest" or "half-way house" situation, he or she is eligible to vote. Please note, a person released from prison is required to register again at his or her next residence after release.

Therefore, if the plain language of Directive 2015-25 is not sufficiently clear, other publications issued by the Secretary of State make it abundantly clear that the Secretary of State does not interpret Plaintiff to be incompetent to vote until she actually steps foot in jail to begin serving her sentence. She is not currently in jail or prison for her felony conviction. Nor is she incarcerated for a probation violation, violation of post release control, parole, and she is not being detained for extradition. Put plainly, Plaintiff is not incarcerated. Thus, regardless of whether such publications are binding on the Board, as it so vehemently argues against, the job of the Board is to follow the Secretary of State's instructions; this includes, following the Secretary of State's interpretation of Ohio law. As Plaintiff correctly asserts, an agency's interpretation of a statute is given deference. *See Ohio Consumers' Counsel v. Pub. Util. Comm'n.*, 111 Ohio St.3d 300, 316, 856 N.E.2d 213, 231 (2006) (quoting *Weiss v. Pub. Util. Comm'n.*, 90 Ohio St.3d 15, 17-18, 734 N.E.2d 775, 778 (2000)).

The Board argues in the alternative that if the Secretary of State's interpretation is unambiguous, it is in conflict with the plain language of R.C. 2961.01 and thus, the Board should not follow its directive on the topic.  It argues that the tedious task of analyzing the statutory construction of R.C. 2961.01 provides the correct interpretation.  In conducting that analysis, the Board fervently argues that it is the conviction—not the incarceration—that renders Plaintiff incompetent to vote under R.C. 2961.01.  The Board explains that R.C. 2961.01 uses the felony conviction as a benchmark for determining whether an individual is a qualified elector.  It argues this must be true because R.C. 2961.01 does not include the word incarceration at all.

This argument is problematic at this stage for several reasons.  Here, it is undisputed that Plaintiff was sentenced to a jail term of six months on December 5, 2014.  The Court requested certain documents during oral argument.  Those documents were supplied.  One of the documents provided was the Amended Clerk of Court's Monthly Report of Convictions[4], which lists Plaintiff's sentence date as December 29, 2014 – the date of the execution of her sentence.[5]  While it is not clear at this stage why that date was chosen, a couple of inferences can be made. First, contrary to the Board's argument otherwise, a clerk of court might be privy to information regarding whether someone is actually incarcerated following a felony conviction and the imposition of jail or prison sentence.  Second, monthly conviction reports appear to provide the date the individual will begin a period of incarceration (or the execution of the sentence), and not the date the sentence is imposed.  If the latter is true, the clerk of court's standard practice could be the result of using Plaintiff's interpretation of Ohio law.  That is, it is not the felony conviction itself, but rather the execution of the sentence that determines whether an individual is

---

[4] The clerk of court amended its December 19, 2014 monthly report of convictions on February 26, 2016 to include Plaintiff's name.

[5] The Court takes judicial notice of the case schedule in Hamilton County Common Pleas Case No. B1400110: State of Ohio vs. Tracie Hunter.

a competent elector.  Consequently, if the Board uses these monthly conviction reports to remove individuals from the voting rolls as it claims, it has been effectively interpreting R.C. 2961.01 the same way.  The Board has not argued that the clerk of court uses the incorrect sentence date on its monthly conviction reports.

Moreover, the Secretary of State's interpretation appears to be in accord with Ohio law for another reason.  The Board asks the Court to adopt a definition of "judicially released" used in another chapter of the Ohio Revised Code – R.C. 2929.20.  Plaintiff is correct, however, that judicial release is a term that is applied differently—albeit similarly—in various sections of the Ohio Revised Code.  *Compare* R.C. 2929.20 *with* R.C. 2152.22 *and* R.C. 2967.19.  However, the term "judicial release," like "pardon" and "parole," is not defined in R.C. 2961.01.[6]  Rather, the legislature apparently chose not to define the circumstances in which judicial release applies under the statute at issue in this case.  And for the reasons discussed herein, the only reasonable interpretation of R.C. 2961.01 appears to be that because Plaintiff's sentence has been judicially stayed, she has been judicially released for the time being.

Finally, with respect to R.C. 2961.01(A)(1), the statute specifies that a person is incompetent to be an elector, "unless the plea, verdict, or finding is reversed or annulled…"  This language appears to carve out an exception for the appellate process, at least indirectly.  Therefore, because Plaintiff is still in the process of appealing her conviction, her conviction could ultimately be reversed or annulled.  Thus, Plaintiff may never be incarcerated.

Accordingly, for the reasons stated herein, Plaintiff has made a preliminary showing that she is currently a competent elector under R.C. 2961.01.

---

[6] The latter two terms are other circumstances in which convicted felons are considered qualified electors.

12

### ii. **Treatment of Plaintiff**

Plaintiff also argues that she was treated differently than others similarly situated in violation of the Equal Protection Clause of the Fourteenth Amendment.

R.C. 3503.18 provides the procedure for canceling a voter's registration upon conviction. R.C. 3508.18 states as follows:

> (C) At least once each month the clerk of the court of common pleas shall file with the board the names and residence addresses of all persons who have been convicted during the previous month of crimes that would disfranchise such persons under existing laws of the state. Reports of conviction of crimes under the laws of the United States that would disfranchise an elector and that are provided to the secretary of state by any United States attorney shall be forwarded by the secretary of state to the appropriate board of elections.
>
> (D) Upon receiving a report required by this section, the board of elections shall promptly cancel the registration of each elector named in the report in accordance with section 3503.21 of the Revised Code. If the report contains a residence address of an elector in a county other than the county in which the board of elections is located, the director shall promptly send a copy of the report to the appropriate board of elections, which shall cancel the registration in accordance with that section.

R.C. 3503.18(C) and (D). R.C. 3503.21 explains that the registration of a registered voter shall be canceled at the time of the felony conviction. No notice provision is included in the statute.

In this case, Plaintiff was sentenced to a term in jail on December 5, 2014. Plaintiff was not included on the clerk of court's monthly report of convictions. The Board argues that it learned Plaintiff was an unqualified elector in December 2015, when it sought an independent legal opinion regarding whether she could be placed on the 2016 primary election ballot. On August 19, 2016, Plaintiff re-registered to vote. Apparently, Plaintiff's registration form was initially approved. Then, on September 29, 2016—two days after this lawsuit was filed—the Board sent Plaintiff a letter informing her that her registration was erroneously approved.

A few questions remain. First, the Board does not explain how Plaintiff's conviction "slipped through the cracks" and was not included on the monthly convictions report for over a year. Moreover, it is not apparent whether there have been any other cases in which individuals were sentenced to terms of incarceration, but the execution of those sentences stayed for a period of time; and if so, how those cases were handled. Finally, it remains unclear whether a possible reason for the gap of time between when Plaintiff was convicted and when she was disenfranchised was the result of any consideration on the part of the Board that she had been granted a judicial stay by the Ohio Supreme Court.

The answers to these questions could determine whether Plaintiff was treated differently than other individuals similarly situated. Accordingly, the Court finds that the questions raised are sufficiently serious, substantial, and difficult so as to satisfy the preliminary burden.

## B. Irreparable Harm

"To demonstrate irreparable harm, the plaintiff[] must show that . . . [she] will suffer actual or imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet v. Lexington-Fayetee Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).

Plaintiff argues that constitutional violations trigger irreparable harm and thus, no further showing of irreparable injury is necessary. *See, e.g. Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Obergefell v. Kasich,* 2013 WL 3814262, at *6 (S.D. Ohio 2013). The Board makes no argument to the contrary.

If the denial of Plaintiff's registration is permitted to stand, Plaintiff's fundamental right to vote on November 8, 2016 may be irreparably harmed – namely, election night will have

come and gone without Plaintiff casting her ballot.  Such threatened harm cannot be remedied after the fact.  Plaintiff's argument is more compelling in light of the Court's conclusion that Plaintiff is likely to succeed on the merits of her claim.  As other Judges in this District have previously explained, "[b]ecause this Court has found that the Defendants' challenged actions threatened to impair both Plaintiffs' constitutional right to due process and constitutional right to vote, the Court must find that Plaintiffs will suffer an irreparable injury if the temporary restraining order does not issue."  *Miller v. Blackwell*, 348 F. Supp.2d 916, 922 (S.D. Ohio 2004).  Accordingly, the Court finds that this factor favors Plaintiff.

### C. Substantial Harm to Others

With regard to determining the probability that granting a temporary restraining order will substantially harm others, "the focus is on the harm that a defendant will suffer[.]"  *Lander v. Mongtomery Cty. Bd. Comm'r*, 159 F. Supp. 2d 1044, 1053 n. 18 (S.D. Ohio 2001).   Again, the Board does not argue that granting injunctive relief will cause it harm.  On the contrary, Plaintiff has met her preliminary burden of showing that she is likely to succeed on the merits of her claim.  Accordingly, this factor tips in favor of Plaintiff.

### D. Public Interest

The public interest factor also tips in favor of Plaintiff.  First, public interest favors all eligible voters participating in the electoral process.  Moreover, public interest favors that individuals questioning their eligibility to vote are able to rely on directives and other advisory materials issued by the Secretary of State.  The Board does not persuade the Court otherwise.

### 2. Motion to Certify a Question of State Law

The Board also argues that this is purely an issue of state law and thus, a mandamus action before the Ohio Supreme Court is the proper mechanism to provide Plaintiff her requested

relief.  First, the Board asks that this Court not address the merits of Plaintiff's Section 1983 claim until the dispositive issue of Ohio law has been decided by an Ohio Court.  (Doc. 14, PageID 90).  As the Board correctly asserts, the Sixth Circuit has explained that "[a]bstention under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is appropriate only where state law is unclear and a clarification of that law would preclude the need to adjudicate the federal question."  *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011).  Where the undersigned and the Board diverge in opinions is the question of whether the state law at issue—R.C. 2961.01—is unclear as to warrant abstention.  For the reasons stated herein, the Court finds that it is not.  Accordingly, abstention is not appropriate.

In the alternative, the Board asks this Court to stay the action and certify what it calls a determinative question of state law, to the Ohio Supreme Court; the question it poses?  Whether the term "judicial release" in Ohio Revised Code § 2961.01(A)(2) refers to "judicial release" provided by Ohio Revised Code § 2929.20.  (Doc. 14-1, PageID 105).  The Court declines to do so.  Again, as previously explained, this matter does not involve an unclear state law that requires interpretation by the Ohio Supreme Court.[7]  Therefore, the Board's argument is without merit.

## IV.    <u>CONCLUSION</u>

Balancing the above factors, the Court finds that temporary injunctive relief is warranted.  Accordingly, the Board is enjoined from rejecting Plaintiff's voter registration.

Bond is set at $100.

---

[7] The Court notes that the Board actually classifies the interpretation of R.C. 2961.01 as "the routine application of established law…"  (Doc. 14, PageID 95).

Consistent with the foregoing, Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunctive Relief. (Doc. 3) is **GRANTED**.

This Order shall remain in effect until further Order of the Court.  This matter is set for a preliminary injunction hearing on October 14, 2016 at 11 a.m. in Courtroom 109 before the Honorable Michael R. Barrett.

**IT IS SO ORDERED**.

_s/*Michael R. Barrett*_____
Michael R. Barrett, Judge
United States District Court